GEORGE H. TRUMAN v. DAKOTA TRUST COMPANY, a Corporation, and Lottie A. Becker, Both Individually and as Executrix of the Will of Carrie L. Truman, Deceased, Intervener.

(151 N. W. 219.)

**Estates — property scheduled — husband's property listed as property of estate of deceased wife — action in replevin to recover — appeal from adverse judgment — claim to exemptions — made pending such appeal — appeal not repudiated — dismissal.**

1. The fact that pending an appeal from an adverse judgment in an action by a surviving husband to replevin property which has been scheduled with the assets of the estate of his deceased wife and which he claims to own, such husband files a claim for exemptions in such estate as the husband of the deceased, which if allowed in full would require the conveyance to him of all of the property in dispute, does not amount to a repudiation of his prior claim of ownership or justify a dismissal of such appeal.

**Estate — claim and delivery — lies to recover individual property listed — original form of property — immediate right of possession — equitable title — where necessary to first prove — will not lie.**

2. An action of replevin or of claim and delivery will lie against an estate for the recovery of personal property which has been converted by the deceased or wrongfully taken by such estate, and which remains in its original form and in which the plaintiff has the right of immediate possession. It will not lie, however, where the existence of an equitable title is necessary to be proved before the right to the possession by the complainant can be established.

**Certificates of deposits — issued during life of deceased — in her name — with consent of husband — claim and delivery against estate to recover — will not lie.**

3. An action of replevin or of claim and delivery will not lie against the estate of a deceased wife to recover from such estate certificates of deposit

which were taken out during the lifetime of the deceased in her own name with the consent of her husband, even though such husband claims that they were held in trust for him and that the money they represent was his money.

**Action against estate — to recover property listed — evidence — conversations with third persons and deceased — in absence of deceased's surviving husband or wife — not allowed.**

4. Chapter 109 of the Laws of 1909, which provides that "in any action or proceeding by or against any surviving husband or wife touching any business or property of either or in which the survivor or his or her family are in any way interested, such husband or wife will be permitted if they shall so desire to testify under the general rules of evidence as to any and all transactions and conversations had with the deceased husband or wife during their lifetime touching such business or property," does not authorize the introduction of testimony by the executrix or administratrix of such deceased person's estate in a suit against such executrix for the recovery of property claimed to be unlawfully held by such executrix as a part of the property of such estate, of conversations held with the deceased by third persons outside of the presence of the surviving husband or wife.

**Estates — recover of property from — probate court claims — filing of.**

5. One who claims as his own property which has been converted by the executrix of the estate of a deceased person is not precluded from pursuing such property in an appropriate action in the district court by the fact that he has not filed a claim therefor in the probate court.

Opinion filed February 8, 1915. Rehearing denied February 25, 1915.

Appeal from the District Court of Cass County, *Pollock*, J.

Action in claim and delivery to recover the possession of a diamond ring and certain certificates of deposit. Judgment for defendant and intervener. Plaintiff appeals.

Reversed.

Statement of facts by BRUCE, J.

This is an action in claim and delivery which was commenced in November, 1912. Plaintiff seeks to recover from the defendant Dakota Trust Company two certificates of deposit of the face value of $2,131.74 and one diamond ring of the stipulated value of $400. A complaint in intervention is filed by one Lottie A. Becker, in which she claims to be the owner and entitled to the possession of the property in question individually and as executrix of the estate of Carrie L. Truman, the deceased wife of the plaintiff. The case was tried to a jury, and at

the close of the entire case a verdict was directed in favor of the intervener as such executrix and of such trust company. The motion for such directed verdict was based upon the four grounds: First, that the possession of the property could not be recovered in an action in claim and delivery under the proof in the case; second, that there was no testimony tending to show that the plaintiff was the owner; third, that as the certificates had been issued in the name of the deceased and of the intervener for a long time prior to the death of the deceased, the plaintiff was guilty of laches, and was estopped to claim the property in this action; fourth, that the plaintiff having failed to file his claim against the estate, his right of action was barred. The appeal before us is from the judgment entered upon the verdict so directed.

It also appears from the record that after the trial of the action in the district court, the appellant, George H. Truman, filed in the county court of Cass county and in the proceedings for the distribution of the estate of the deceased a claim in which he asked to be allowed $1,500 exemptions as the surviving husband of the said Carrie L. Truman, deceased, and that thereafter and in due course this claim was brought on for hearing, but was disallowed by the court, and that later and on the 20th day of September, 1913, an order was entered in the district court dismissing an appeal from such order and ordering that the action of the county court refusing to allow petitioner's claim for exemptions be in all things approved and sustained. The record also shows that outside of the certificates of deposit and the ring mentioned there was about $575 worth of property in the estate, while the expenses and indebtedness incurred by the administratrix amounted to more than $650.

The plaintiff also testifies that he and Carrie L. Truman were married in 1882; that Carrie L. Truman died in December, 1911; that she had no property of her own, and that though she engaged at different times in business enterprises, no profit was made therein except, perhaps, when she was working in the millinery business in the early eighties, and perhaps when she was working for a short time on a salary, though the amount of the salary is not disclosed. Defendants seek to rebut this testimony by proof of earnings much of which evidence, however, was incompetent. The plaintiff, George H. Truman,

appears to have turned over a portion of his earnings to his wife at different times, and she told him that she had put the money in the First National Bank of Fargo, but he never went with her when she made the deposits. She seems to have taken out certificates of deposit in her own name, and this appears to have been known to the plaintiff. It is also shown that later she had these certificates made out jointly to her and her daughter, Mrs. Lottie A. Becker, the intervener, and this fact was known to the plaintiff in the spring of 1910, but he did not go to the bank to find out. In May or June, 1910, the plaintiff and his wife separated. They lived apart thereafter until her death in December, 1911. After the separation, Truman paid his wife a monthly allowance. There is also evidence that shortly before her death Mrs. Truman turned the certificates over to Mrs. Becker, together with some rings, $260 in cash, and the $400 diamond ring, concerning which the plaintiff testifies that several times he bought diamond rings for investment, and later he exchanged these rings for the one now in dispute, paying the balance. He testified that the purpose was purely that of an investment, but that he allowed his wife to wear this and the other rings. He appears to have had no bank account of his own.

The intervener, Mrs. Lottie A. Becker, testified that shortly before her death the deceased gave the property in controversy to her, and that after the death of Mrs. Truman she took possession of the certificates and the ring, and later, upon her appointment as executrix of Mrs. Truman's estate, brought the certificates and ring back to Fargo, listed them in the inventory of the estate, and then deposited them with the Dakota Trust Company, the original defendant herein, as security for the bond issued to her as executrix. It is also shown that prior to her death, Mrs. Truman made a will in which she bequeathed the certificates and ring in question to Mrs. Becker. Later, and in the probate proceedings, the plaintiff filed an answer claiming the property in question as his own, but merely as a reason why Mrs. Becker should not be appointed as executrix of the estate. He at no time, however, seems to have filed any specific claim for the property or for the proceeds thereof in the probate court. Later, also, he filed a claim for exemptions in said estate as the husband of the said deceased and to the amount of $1,500. This claim, however, was disallowed.

*Barnett & Richardson,* for appellant.

Plaintiff was not guilty of laches in bringing this action. The action was brought just as soon as plaintiff learned that the intervener claimed the property in question. Before gaining such knowledge, no action was necessary. Further than this there is no evidence or claim or prejudice to anyone, nor has either of the other parties changed his position or rights by reason of delay. Such change is *necessary* to establish laches. The same reason applies to the contention that plaintiff was estopped to claim the property in question. Turpin v. Dennis, 139 Ill. 274, 28 N. E. 1065; Tynan v. Warren, 53 N. J. Eq. 313, 31 Atl. 596; Coleman v. Whitney, 62 Vt. 123, 9 L.R.A. 517, 20 Atl. 322; Ex-Mission Land & Water Co. v. Flash, 97 Cal. 610, 32 Pac. 600; Luke v. Koenen, 120 Iowa, 103, 94 N. W. 278.

Under the directed verdict, it must be conceded that the certificates and ring in question were purchased with plaintiff's money, only *with the consent of appellant* as a means of keeping such money, and as an investment.

No *title* passed to the wife at any time, for the reason that there is no testimony showing any intention or desire or purpose to change the title from the husband to the wife. Title to personal property may only be changed as follows: (1) By original acquisition; (2) by transfer by act of the law; (3) by transfer by act of the parties. 22 Am. & Eng. Enc. Law, 752, § 4.

The fact that the trust company was keeping the property for intervener is immaterial. Flatner v. Good, 35 Minn. 395, 29 N. W. 56.

Nor is the fact that appellant never had possession of the certificates material. Miller v. Warden, 111 Pa. 300, 2 Atl. 90.

Testimony as to conversations of deceased with *third persons* is wholly inadmissible, and especially is this true when such conversations were had in the absence of plaintiff, deceased's husband, plaintiff offered testimony as to conversations had between him and the deceased wife. He had the statutory right to do so. But this did not open the door to defendant, nor did it give the right to defendant to offer testimony of third persons as to conversations had with plaintiff's deceased wife, in his absence. Neither is such testimony rebuttal, because it relates to other and different matters than those embraced within plaintiff's testimony as to plaintiff it is mere hearsay. Frank v. Thompson, 105 Ala. 211, 16 So. 634; 40 Cyc. 2347, note 8.

*Watson & E. T. Conmy,* for respondents.

The plaintiff is precluded and estopped from appealing from the judgment herein, because he has taken and retained benefits under said judgment, acquiesced in same, and has proceeded in a legal way to enforce a claimed right which could only be created through such judgment. The trial court holds that the property sued for here was the property of the estate of Carrie L. Truman. The plaintiff acquiesces in and accepts benefits under such judgment, when he asks for exemptions out of this specific property. Tyler v. Shea, 4 N. D. 377, 50 Am. St. Rep. 660, 61 N. W. 468; Williams v. Williams, 6 N. D. 269, 69 N. W. 47; Tuttle v. Tuttle, 19 N. D. 748, 124 N. W. 429; Bennett v. Van Syckel, 18 N. Y. 481; Liebuck v. Stahle, 66 Iowa, 749, 24 N. W. 562; Priestly v. Shaughnessy, 10 La. Ann. 455; McGrew v. Grayston, 144 Ind. 165, 41 N. E. 1027; Garner v. Garner, 38 Ind. 139; Manlove v. State, 153 Ind. 80, 53 N. E. 385; Ault v. Gill, 14 Ky. L. Rep. 525.

The plaintiff, by his conduct and actions inconsistent with his claims in this action, waived his right of appeal herein and waived any error of the trial court, and is estopped to prosecute this appeal, and same should be dismissed. Murphy v. Spaulding, 46 N. Y. 556; Gordon v. Ellison, 9 Iowa, 317, 74 Am. Dec. 353; Joseph Goldberger Iron & Steel Co. v. Cincinnati Iron & Steel Co. 153 Ky. 20, 154 S. W. 374; Bennett v. Van Syckel, 18 N. Y. 481; Knapp v. Brown, 45 N. Y. 207; Marvin v. Marvin, 11 Abb. Pr. N. S. 97; Carll v. Oakley, 97 N. Y. 633; Baylies, New Trials & Appeals, pp. 18, 19; Samuel v. Samuel, 59 Kan. 335, 52 Pac. 889.

Third persons can testify to conversations had with the deceased wife of plaintiff, and to her statements, contrary to the testimony of plaintiff. Braithwait v. Aiken, 2 N. D. 57, 49 N. W. 420; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 731; Regan v. Jones, 14 N. D. 591, 105 N. W. 613; First Nat. Bank v. Warner, 17 N. D. 76, 114 N. W. 1087, 17 Ann. Cas. 213; 40 Cyc. 2348.

Under the contract between plaintiff and wife as to the deposit of the money, if after her death there was anything owing to plaintiff thereunder, his remedy was to file a claim against her estate and proceed to collect it. Rev. Codes 1905, § 8099; Cottonwood County Bank v. Case, 25 S. D. 77, 125 N. W. 298.

An action in claim and delivery will not lie against the estate. In order to maintain such action, plaintiff must show title, and an *immediate* right of possession. Replevin will not lie to recover money or scrip unless it is so marked as to be capable of identification. But this action is to recover certificates of deposit—the legal title to which is in Carrie L. Truman and Lottie A. Becker. Wheeler v. Allen, 51 N. Y. 42; Spalding v. Spalding, 3 How. Pr. 297; Seymour v. Van Curen, 18 How. Pr. 94; Sager v. Blain, 44 N. Y. 449; Pilkington v. Trigg, 28 Mo. 96; Leete v. State Bank, 141 Mo. 584, 42 S. W. 927; Turner v. Langdon, 85 Mo. 44, and cases cited; Stonebraker v. Ford, 81 Mo. 532; 34 Cyc. 1359; Graves v. Dudley, 20 N. Y. 76; Bowker Fertilizer Co. v. Cox, 106 N. Y. 555, 13 N. E. 943; Dowdy v. Calvi, 14 Ariz. 148, 125 Pac. 876.

An equitable assignee of a chose in action cannot maintain replevin to recover possession of it against the legal owner and holder. Clapp v. Shepard, 2 Met. 127; 34 Cyc. 1354; Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 935; Cobbey, Replevin, § 2; 7 Lawson, Rights & Rem. § 3642; Flannigan v. Goggins, 71 Wis. 28, 36 N. W. 846; Hooker v. Latham, 118 N. C. 186, 23 S. E. 1004; Pasterfield v. Sawyer, 132 N. C. 258, 43 S. E. 799; s. c. 133 N. C. 44, 45 S. E. 524; Bridgers v. Ormond, 148 N. C. 375, 62 S. E. 423.

The plaintiff has been guilty of such laches in bringing this action as to preclude and estop him to maintain it now. State ex rel. Madderson v. Nohle, 16 N. D. 168, 125 Am. St. Rep. 628, 112 N. W. 143; Jones v. Subera, 25 S. D. 223, 126 N. W. 253; Kenny v. McKenzie, 25 S. D. 485, 49 L.R.A.(N.S.) 775, 127 N. W. 597; Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618; "Estoppel or Waiver," 39 Cyc. 519; Jones, Ev. § 74, p. 74; "Estoppel," 16 Cyc. 813.

BRUCE, J. (after stating the facts as above). It is claimed that the action of plaintiff in claiming the ownership of the property in dispute in the present action of claim and delivery in the district court is totally inconsistent with his claim for exemptions as the husband of the deceased which was later filed in the county court, and that the filing of such claim was an acceptance of the judgment of the district court in the replevin action, and a motion is made to dismiss the appeal for this reason. We think, however, that there is no merit in this

motion. The record shows that in addition to the certificates of deposit and the diamond ring in controversy there was property in the estate to the value of $575, and though an allowance seems to have been claimed by the executrix of said estate to the amount of $650 for expenses incurred, no decree of final distribution seems to have been entered. Nor do we believe that the mere fact that the claim for exemptions was filed for more than the condition of the estate would warrant, and that such exemption, if allowed, would necessarily involve some, if not all, of the property sought to be replevined, would make the claim so inconsistent with the prior assertion of the ownership of the certificates of deposit and of the diamond ring in question as to amount to an election of remedies, and justify a dismissal of the appeal. Plaintiff, indeed, does not take to inconsistent positions. He merely says that he is entitled to the property because he owns it, and that, even if the court holds that he does not own it, he is still entitled to it as his exemption as the husband of his deceased wife.

The point next to be considered is the contention of defendants that the action of replevin will in no event lie under the facts of the case, but rather one in equity, and that since the plaintiff has filed no claim in the probate court, his right of action is barred.

We agree with the defendants in their first proposition in so far as the certificates of deposit are concerned, but not in regard to the diamond ring. We, indeed, concede the general proposition that merely equitable titles may not be litigated or accountings obtained in an action of replevin or claim and delivery; that only he who has the right of immediate possession may bring the action; that in such cases the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of the defendant. Leete v. State Bank, 141 Mo. 584, 42 S. W. 927.

This rule, however, though applicable to the certificates of deposit, is not applicable to the diamond ring, and the verdict as directed by the learned trial court was therefore improper. It is to be remembered, indeed, that the case comes before us on a motion to direct a verdict for the defendant, and in such cases we must give to the plaintiff's evidence the most favorable construction which is reasonably possible. If we do so, the action in so far as the ring is concerned is not one for an accounting or to establish an equitable title in prop-

erty in the hands of an innocent third party, but to recover from a bailee personal property which she or he has wrongfully converted and detailed.

It is quite clear to us that the petitioner, Lottie A. Becker, had no right as an individual to intervene in the case, as she had individually no interest in the property and no right to the immediate possession thereof. It is true that she testified that prior to the death of Mrs. Truman, Mrs. Truman gave the property to her. She, however, subsequently scheduled the property as an asset of the estate, and elected to take it under the will, and based her whole claim upon such will. She thus relinquished any claim she may have had under the gift. In fact, in her petition she says nothing of the gift whatever. The court, however, merely directed a verdict in her favor as administratrix, and therefore no error was committed in so far as she was individually concerned. When we come to the trust company, the position is the same. The property at the most was the property of the estate, and did not belong—at. least until the final decree of distribution—to the intervener, Lottie A. Becker. It goes without saying that an administratrix or an executrix of an estate cannot pledge the property of that estate as security for her own bond which is given to protect the estate, the creditors thereof, and the very property which she seeks to pledge. The position of the trust company was therefore merely that of a custodian, or as a servant or agent, of the executrix for safe-keeping.

The question remains whether as executrix of such estate, the intervener, Lottie A. Becker, was entitled to the possession of such property as against the plaintiff, George H. Truman, or, conversely, whether George H. Truman was entitled to the possession of such property and could maintain a replevin action against Lottie A. Becker as such executrix.

We are clearly of the opinion that as far as the diamond ring was concerned the action of replevin or of claim and delivery would lie, and that there was enough evidence introduced by the plaintiff, which, if taken alone, would justify a submission to the jury, the rule being well established that on a motion to direct a verdict in favor of the defendant, the evidence of the plaintiff must be taken in its most favorable light.

The evidence of the plaintiff in regard to the ring was as follows:

"I bought three or four rings,—three anyway. I bought one in the first place. The ring was about a carat and a half and then I bought another two-stone ring. I don't remember the weight. Then this other ring there was traded. There was some exchanges made around on it and differences paid, but of course that was exchanged in with the other ring to get a little larger one. I went down there and looked the rings over before they were bought, and they were paid for in payments. Mrs. Truman went and paid the payments, I gave her the money. I never made any payments myself that I remember. She did almost all that business herself, paying bills, etc. . . . . I don't know what the amount of the difference was, when my wife deposited a ring with Hagen and got this ring exhibit C. I think the payments were made at different times. This was the information I got from Mrs. Truman. I didn't go there when the money was paid. I took her word for it. I know she was anxious about it. I objected in the first place, but finally consented to her making the change." And again: "In regard to the rings, there are three or four of those rings. I bought those rings and paid for them; bought them from Martin Hagen down here. Mrs. Becker had a ring and wanted to trade it with her mother. Her mother came to me and asked me several times for my consent to allow her to trade. I had bought these rings and paid for them. Finally I consented. Then she went to work and made another exchange and got this larger diamond. The second exchange was made at Martin Hagen's. The trade was made, she paid part, and I furnished the money to pay the difference in the bargain. Mrs. Truman figured diamonds was the same as money. She could have the use of them and they were increasing in value, and it would be the same as laying up money, and I consented to that and let her have the diamonds so that she could have them to use."

If we construe this testimony in its most favorable light, and this we must do, the executrix and the trust company are in the same position as the finder of lost goods who, having paid no consideration therefor, refuses to deliver them to the true owner. In such a case it is elementary law that claim and delivery will lie. Cobbey, Replevin, § 3554. As far as this ring is concerned, indeed, we have a case where a ring belonging to a husband, held by his wife as a gratuitous bailee and for the benefit of the bailor, is given by such bailee to her

29 N. D.—30.

daughter, which in itself is a conversion, and the daughter then schedules the property with the assets of the deceased wife's estate, and thereafter deposits such property as security for her own personal bond as an executrix. This, in itself, is another conversion. The action, in short, is not one to assert an equitable title, but to follow and recover one's own specific property. The court therefore erred in taking the case from the jury in so far as the diamond ring was concerned. Farrow v. Farrow, 72 N. J. Eq. 421, 11 L.R.A.(N.S.) 389, 129 Am. St. Rep. 714, 65 Atl. 1009, 16 Ann. Cas. 507.

When we come to the certificates of deposit, however, we are of the opinion that even if the facts were as claimed by the plaintiff, the action of replevin or of claim and delivery would not lie. The reason for our holding is that the legal title to the certificates of deposit seems at no time to have been in the plaintiff, but an equitable title merely, and that the right of the plaintiff, if any, was to follow a trust fund, rather than to seek to recover specific property of which he had at no time the right of immediate possession. An action of replevin will not lie where the existence of an equitable trust is necessary to be proved before the right to the possession by the complaint can be established. We cannot, in fact, do better than to quote from the language of the supreme court of New York which was used in a somewhat similar case. "This action," the court said, "cannot be maintained. The scrip was held by the defendant, on the books of the Great Western Insurance Company, in his own name. The legal title was in him. As the scrip stood in that way for several years, it is a legal inference that it was by the consent or permission of the plaintiff. A demand and refusal to *transfer* did not give the plaintiff the title to the scrip. Possession of the scrip, without a transfer, would be of no avail to the plaintiff. All that the plaintiff could recover (assuming that he could maintain replevin), would be the possession of that which would not avail him, *viz.*, scrip standing in the name of Allen. Such a recovery would be nugatory. But the plaintiff cannot, in my opinion, recover scrip of which the legal title is in the defendant by his permission, in an action of replevin; or of claim and delivery, which is an action of the same legal nature. If the plaintiff desires the identical scrip, his remedy is in equity. If he desires damages only, he can, perhaps, maintain an action on the case." Leonard, J., in Wheeler v. Allen.

49 Barb. 460, affirmed in 51 N. Y. 37. See also Leete v. State Bank, 141 Mo. 584, 42 S. W. 927; Bridgers v. Ormond, 148 N. C. 375, 62 S. E. 423.

Even though replevin would not lie for the certificates of deposit, however, it would, as we before stated, lie for the recovery of the ring, providing the proper proof was adduced. Enough evidence was introduced to justify a submission of the case to the jury on the question of the ring, and the trial court committed error when it directed a verdict in favor of the defendants for the possession of both the ring and the certificates of deposit, and the verdict as a whole was improper. A new trial, therefore, must be had.

A new trial being necessary, and a decision of the question being necessary for the proper conduct thereof, we further add that it is clear to us that the testimony of the intervener, Lottie A. Becker, and of all other witnesses, save the plaintiff husband, as to the conversations alleged to have been held by them with the deceased, Carrie L. Truman, was inadmissible. The original statute on the subject was ¶ 2, of § 5653, Rev. Codes 1899, being ¶ 1 of chapter 17 of the Laws of 1879, amended. This section provided that "in civil actions or proceedings by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. But if the testimony of a party to the action or proceeding has been taken and he shall afterwards die and after his death the testimony so taken shall be used upon any trial or hearing in behalf of his executors, administrators, heirs at law or next of kin, then the other party shall be a competent witness as to any and all matters to which the testimony so taken relates."

Chapter 109 of the Laws of 1909 amended this section by adding the following proviso: "Provided, further, that in any action or proceeding by or against any surviving husband or wife touching any business or property of either, or in which the survivor or his or her family are in any way interested, such husband or wife will be permitted, if they shall so desire, to testify under the general rules of evidence as to any or all transactions and conversations had with the

deceased husband or wife during their lifetime touching such business or property." It will be noticed that this provision or amendment merely relates to conversations held between the surviving husband or wife and the deceased husband or wife, and relates to no other person whatever. There is nothing in the statute or in the rules of evidence which would justify the admission in evidence of conversations held between the deceased and a third person, and not in the presence of the surviving husband or wife. Such evidence would have been clearly hearsay if introduced during the lifetime of the deceased, and we find nothing in the statute which changes the general rule as to hearsay evidence.

The failure of the appellant to file a claim in the probate court did not preclude him from maintaining this action.

The judgment of the District Court is reversed and the cause is remanded for further proceedings according to law.

On Petition for Rehearing (Filed February 25, 1915).

BRUCE, J. Counsel for appellant appears to have misconstrued our original opinion, and no doubt some explanation is necessary. We did not hold that, if the evidence had shown that the interest of the plaintiff in the diamond ring was merely that of a joint owner, an action of replevin or of claim and delivery would have lain. We merely held that as we construed the evidence of the plaintiff, the sole ownership and right of possession was shown in him, and that therefore the action would lie.

Nor did we wish to be understood as holding that the testimony as to conversations between third persons who are not parties to the suit, and a deceased husband or wife, would be inadmissible in all cases. In relation to such testimony we have no specific statutes, and the ordinary and general rules of evidence obtain.

All that chapter 109 of the Laws of 1909 did was to free the surviving husband or wife, when a litigant, from the disqualifications and personal inability to testify as to conversations with the deceased spouse in "an action or proceeding by or against the executor, administrator, heirs at law, or next of kin," of such persons which was imposed upon him by ¶ 2 of § 6563, Rev. Codes 1899, being ¶ 1 of chapter 17 of the

Laws of 1879. Witnesses who are not parties to the suit are not disqualified by such statute, and may still testify as to conversations held with the deceased which are otherwise admissible, but subject, of course, to the general rules as to hearsay evidence.

The petition for a rehearing is denied.